AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>Jonathan Caravello,<br><br>Defendant | Case No.   2:25-mj-04300 |

FILED
CLERK, U.S. DISTRICT COURT
07/12/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____CLD_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of July 10, 2025, in the county of Ventura in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assault on a Federal Officer |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Virginia Pulido, HSI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    July 12, 2025 at 2:40 p.m.

Judge's signature

City and state:   Los Angeles, California    Hon. Maria A. Audero, U.S. Magistrate Judge
Printed name and title

AUSA: Roger Hsieh (x0600)

**AFFIDAVIT**

I, Virginia Pulido, being duly sworn, declare and state as follows:

## I.  BACKGROUND OF AFFIANT

1. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") where I have worked since September of 2020. I am currently assigned to the HSI Los Angeles El Camino Real Financial Crimes Task Force, Group 3. During my tenure as a criminal investigator, I have completed approximately 350 hours of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia and completed the Criminal Investigator Training Program ("CITP"). Following CITP, I completed Homeland Security Investigations Special Agent Training ("HSISAT"). HSISAT consisted approximately 350 hours of training in handling HSI specific investigative cases that include but are not limited to Worksite Enforcement, Human Trafficking, Drug Smuggling, and Money Laundering.

2. HSI is responsible for enforcing federal criminal statutes prohibiting, among other things, the distribution of and possession with intent to distribute drugs, in violation of Title 21 of the United States Code. Additionally, HSI investigates the smuggling of illicit cargo and items into and out of the United States. I obtained a Bachelor of Arts in Criminal Justice at the California State University of Fullerton.

## II. **PURPOSE OF AFFIDAVIT**

3. This affidavit is made in support of a criminal complaint against, and arrest warrant for, Jonathan CARAVELLO ("CARAVELLO") for a violation of 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding a Federal Officer).

4. The facts set forth in this affidavit are based upon my training and experience and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. **STATEMENT OF PROBABLE CAUSE**[1]

### A. Law Enforcement Executes a High-Risk Search Warrant

5. On July 10, 2025, HSI Special Agents and Border Patrol ("BP") Agents executed a dual-location search warrant issued by Chief Magistrate Judge Karen Stevenson in the City of Camarillo, California, and the City or Carpinteria, California, within the Central District of California.

6. Specifically, from approximately 10:00 a.m. and 6:00 pm, HSI Agents executed a search warrant at 645 Laguna Road Camarillo, California (the "SUBJECT LOCATION"). The SUBJECT

---

[1] Unless otherwise noted, the facts set forth in Section III are based on conversations with other law enforcement officers involved in this investigation and my review of body worn camera footage associated with the below-described incident.

LOCATION is the business location for Glass House Farms, a massive marijuana farm that sits on a 160-acre property according to online research. I understand that the SUBJECT LOCATION is comprised of a large field containing multiple large green houses on the property, which are free-standing, fully enclosed buildings with a roof and pedestrian access doors allowing employees free access from the open field into and out of the greenhouses. Further, based on my training and experience, conversations with other law enforcement officers, and my knowledge of marijuana cultivation, I understand that implements used in marijuana cultivation include shovels, scissors, and both large and small hand tools.

7. Given the tremendous size of the SUBJECT LOCATION, the potential dangers inside each greenhouse based on the equipment used in the cultivation of marijuana, and the large number of expected subjects at the location, HSI agents enlisted assistance from other law enforcement agencies. The other law enforcement agencies would assist in safely executing the high-risk search warrant by guarding the outer perimeter of the property to ensure both officer safety and the safety of the persons encountered working at the SUBJECT LOCATION. Specifically, BP agents assisted with guarding the east block of the SUBJECT LOCATION at Laguna Rd and Las Posas Rd to ensure non-law enforcement protestors did not enter the premises. BP agents wore their agency issued green tactical uniform, black ballistic helmets, and exterior vest bearing patches marked "Police" in yellow writing affixed on the front and the words

"Federal Agent" on a patch below and back of the vests along with patches bearing "Border Patrol" affixed to both uniform shirt sleeves.

### B. Dozens of Protestors Attempt to Obstruct the Execution of the High-Risk Search Warrant

8. During the high-risk search warrant execution, a group of protestors began to gather near and around the law enforcement personnel at the entrance of the SUBJECT LOCATION by yellow police tape that law enforcement had placed to deter protestors from entering the premises. The presence of the protestors, along with their personal vehicles, impeded the roadway for law enforcement to exit the SUBJECT LOCATION. The protestors gathered and started chanting "CHINGA LA MIGRA" to BP agents. In my training and experience and use of an online translator, "CHINGA LA MIGRA" is Spanish for "Fuck the Immigration." Throughout the course of law enforcement presence at the SUBJECT LOCATION, the crowd of protestors grew into a larger crowd of approximately a few dozen protestors.

9. One of the protestors was a white male with shoulder length brown hair and a mustache with a short beard. He wore a dark blue floral shirt, blue denim jeans, a brown belt, clear goggles over his eyes, and two beaded bracelets (one red and white beaded bracelet and a black beaded bracelet on his left wrist). This individual was later identified as CARAVELLO, and BP Agent S.H. saw CARAVELLO standing among the protestors near the yellow police tape holding a megaphone. Based on my review of body camera worn footage, CARAVELLO was walking along the

4

yellow police tape loudly playing a siren sound on the megaphone towards BP Agents.

### C. Protestors Fail to Disperse, and CARAVELLO Throws a Tear Gas Canister at Law Enforcement

10. BP agents tried to assist HSI and ERO agents as they were attempting to leave the SUBJECT LOCATION in their government-owned vehicles. As the BP agents attempted to clear a safe pathway between the protestors and the vehicles, protestors did not clear the area and began to approach the vehicles as they were exiting. I understand that certain of the government-owned vehicles attempting to depart the SUBJECT LOCATION, due to the danger from the protestors, were going to the local hospital to assist in providing security for a detainee that had been hospitalized. Later, protestors threw rocks at the government-owned passenger vans and caused large scale damage, including broken windows, broken side view mirrors and frame damage to the vehicles.

11. For the safety of the HSI agents, BP Agents deployed CS tear gas[2] among the protestors to assist with crowd control and ensure officer safety. Upon my review of body worn camera footage, BP agents tossed the CS tear gas at the floor by the protestors' feet with an underhand throw, and one canister landed in front of an individual, later identified as CARAVELLO, and near the crowd of protestors. Rather than back up, CARAVELLO attempted to kick the canister but it proceeded to

---

[2] I understand that CS tear gas canister is comprised of three separate canisters pressed together with separating charges between each in a hard aluminum exterior.

5

roll past him. CARAVELLO turned around, ran towards the canister, picked it up, and threw the canister overhand back at BP agents. A BP Agent reported that the canister was thrown at law enforcement and recalls that the canister came within approximately several feet above law enforcements' heads.

12. An image that I reviewed from the body camera footage shows CARAVELLO bending over to pick up a canister. The image shows the individual with two bracelets on his left wrist, a tattoo on his left forearm, and a water bottle in his left hand:



### D. CARAVELLO Changes Clothes and Is Arrested

13. BP Agent S.H. advised other BP agents in the area that the individual later identified as CARAVELLO was throwing the canisters back at agents. BP Agent S.H. advised that CARAVELLO left the area. Approximately two hours later, an individual matching the description of CARAVELLO with shoulder length hair, a mustache and short beard, wearing clear goggles and two beaded

bracelets on his left wrist, came to the area in a pink t-shirt, light colored jeans, and white shoes. BP Agent R.C. and BP Agent S.H. confirmed that CARAVELLO was identified as an agitator for throwing the CS tear gas canisters at BP agents. Upon my review of the body worn camera footage, it appears that CARAVELLO changed shirts and shoes from the image above. CARAVELLO stood on the back of a pickup truck parked near the yellow police tape and had his phone pointed towards a group of BP Agents.

14. At approximately 5:53 p.m., BP Agent R.C., along with approximately two other BP agents, approached CARAVELLO and attempted to detain him. Based on my review of body worn camera footage, BP agents approached CARAVELLO from behind and attempted to arrest him. As BP agents arrested CARAVELLO, they placed him on his stomach on the ground. BP Agent R.C. gave CARAVELLO verbal commands to give law enforcement officers his arms but CARAVELLO would not comply and attempted to grab a BP Agent's leg. As BP Agent R.C. and other BP agents attempted to detain CARAVELLO, CARAVELLO continuously kicked his legs and refused to give the BP agents his arms.

15. An image that I reviewed from the body camera footage shows CARAVELLO in the process of being arrested. Like the image above, this image shows the individual with two bracelets on his left wrist, a tattoo on his left forearm, and a water bottle in his left hand:



16.  From my training and experience, I understand that protestors may disguise themselves with masks and/or by changing clothing.  A review of body camera footage showed that more than two hours had passed from the time the individual identified as CARAVELLO threw the canister at agents and at the time of his arrest.  This amount of time would have provided CARAVELLO sufficient time to change his shirt, shoes, and other articles of clothing.  From my review of body camera footage, CARAVELLO's jeans appear to be the same or similar when he throws the canister and is arrested.

//

//

8

## IV. CONCLUSION

17. For all the reasons described above, there is probable cause to believe that CARAVELLO has committed a violation of 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding a Federal Officer).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 12th day of July
2025.

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE